UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BELINDA WHITE,

    Plaintiff,

v.                                                                    Case No. 15-13829

DETROIT MEDICAL CENTER
and PATRICIA WILLIAMS,

    Defendants.

                                               /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT**

Pending before the court is Defendants' motion to dismiss, or in the alternative, motion for summary judgment on the grounds of a contractual time limitation on Plaintiff's claims and on the statute of limitations for claims arising under the Americans with Disabilities Act ("ADA"). (Dkt. # 2, Pg. ID 29.) Plaintiff Belinda White seeks damages for unlawful termination by employer Detroit Medical Center ("DMC"). (Dkt. # 1, Pg. ID 23; Dkt. # 5, Pg. ID 58.). Plaintiff raises six claims: wrongful termination/breach of employment contract (Count I), violation of the Family and Medical Leave Act ("FMLA") (Count II), intentional infliction of emotional distress ("IIED") (Count III), retaliatory discharge/violation of state public policy under the Elliot-Larsen Civil Rights Act ("ELCRA") (Count IV), violation of the ADA (Count V), and disparate treatment/racial discrimination in violation of the ELCRA (Count VI).[1] (Dkt. # 1-2, Pg. ID

---

[1] Plaintiff's Complaint does not specify the law under which Count VI arises; rather, she alleges general "disregard of the applicable law and of Defendants' obligations thereunder." (Dkt. # 1-2, Pg. ID 22-23.) Defendants have suggested that

14, 16, 19-22.) Defendants moved to dismiss, or alternatively, moved for summary judgment on each claim. (Dkt. # 2, Pg. ID 29-30.) Plaintiff filed her response in opposition to the motion (Dkt. # 5, Pg. ID 52), to which Defendants replied (Dkt. # 6, Pg. ID 82). Thus, the matter is fully briefed. The court concludes that a hearing on the matter is not necessary. *See* E.D. Mich. L.R. 7.1(f). For the reasons stated below, the court will construe Defendants' motion as a motion for summary judgment and grant in part and deny in part the motion.

## I. BACKGROUND

### A. Factual History

The court will limit itself to a recitation of facts pertinent to this order. Facts are viewed in the light most favorable to Plaintiff.

Defendant DMC hired Plaintiff Belinda White in May 2001. (Dkt. # 1-2, Pg. ID 14.) White most recently served as a radiology patient service representative in DMC's diagnostic radiology department. (*Id.*; Dkt. # 2, Pg. ID 36.) When she accepted employment in 2001, White agreed to terms of an "oral and implied oral contract." (Dkt. # 1-2, Pg. ID 14.) These terms were not provided in the pleadings. White also signed a one-page contract, "Acknowledgment and Acceptance of Employment," on May 14, 2001, containing five terms. The second term states:

> I agree that I shall not commence any action or other legal proceeding relating to my employment or the termination thereof more than six months after the event complained of and I voluntarily waive any statute of limitations to the contrary.

---

this claim arises under the ELCRA. (Dkt. # 2, Pg. ID 30). Plaintiff adopted this classification in her response in opposition to this motion. (Dkt. # 5, Pg. ID 53.)

2

(Dkt. 5-2, Pg. ID # 77.)

DMC terminated White on April 2, 2014, claiming that she violated DMC Progressive Disciplinary Policy when she engaged in the following prohibited behavior:

> Threatening, intimidating, or coercing fellow employees, medical staff, supervisors, patients, or visitors with physical harm on DMC premises. . . . [T]his includes any conduct or activity that generates a reasonable belief that the action or behavior had purpose to coerce, intimidate or threaten physical harm.[2]
>
> . . .
>
> Intentional or unprofessional behavior which adversely affects the care of a patient or operations of the employer, where not permitted by law.[3]

(Dkt. # 5, Pg. ID 58; Dkt. # 1-2, Pg. ID 14.)  On March 19, 2014, White was involved in a verbal altercation with fellow DMC employee Lakeba Sharp in the radiology department. (Dkt # 1-2, Pg. ID 11, 13.)  Pursuant to an order from White's supervisor, Patricia Williams, White had summoned Sharp, who worked in the ultrasound department of Hutzel Hospital, to the radiology desk.  (*Id.* at 12.)  When Sharp arrived, she "openly confronted [White]," and an "exchange of profanities" ensued.  (*Id.* at 13.)  White asserts that she "only engaged after repeated insults . . . in an effort to defend herself."  (*Id.* at 16.)  Sharp threatened physical violence, but Williams, White's supervisor, intervened. DMC patients, visitors, and employees witnessed the altercation.  DMC terminated White the following day, April 2, 2014.  (*Id.* at 14.)

White had been employed by DMC for nearly thirteen years.  This was her first disciplinary violation.  (*Id.* at 12-13.)  She claims to have witnessed "three similar if not

---

[2] DMC Progressive Disciplinary Policy, 1 HR 506(r).

[3] DMC Progressive Disciplinary Policy, 1 HR 506(ac).

worse" altercations between Caucasian employees, none of whom were terminated despite "far more egregious" behavior. (Dkt. # 1-2, Pg. ID 22.)

Before the altercation and before her termination, White took two terms of medical leave under the FMLA. First, in early 2013, she left to care for her mother, a cancer patient. (*Id.* at 17.) When she returned, DMC's Employee Assistance program referred her to a physician to cope with grief and anxiety; DMC reduced White's workload to four hours per day at the physician's request. When White remained emotionally unstable, her physician secured her a second term of FMLA leave. She returned in January 2014 to find that her workload had increased. Her supervisor sent her emails that, as she describes, assigned a "virtually impossible" list of tasks to complete. White believes this was a "deliberate attempt to discourage and motivate her to quit her job in retaliation for her taking family leave time . . . and for complaining about the overwhelming work load . . . ." (*Id.* at 18.)

Additionally, White asserts she is physically disabled under the ADA, due to an unspecified "impairment that substantially limit[s] . . . cognitive and psychological ability . . . ." (*Id.* at 21.) She claims that DMC refused to accommodate her disability. Under the belief that her termination was due in whole or in part to disability discrimination, White filed a charge to the U.S. Equal Employment Opportunity Commission (EEOC) on April 22, 2014. The EEOC issued a right-to-sue notification to her on April 30, 2014. (Dkt. # 5, Pg. ID 59.)

4

## B. Procedural History

Plaintiff brought this action against DMC in Wayne County Circuit Court on September 28, 2015, roughly one and a half years after her termination. (*Id.* at 10.) She claims that her termination was unlawful under the terms of her contract (Count I), and that termination in the aftermath of the March 19th altercation amounted to an intentional infliction of emotional distress (Count III). She also claims that the disciplinary violation is a pretext, and that her termination was an act of retaliation and discrimination against her for taking medical leave under the FMLA (Count II) and for complaining about her workload and DMC's disparate treatment of employees (Count IV). She further claims that DMC discriminated against her disability (Count V) and race (Count VI). The case was removed to this court on October 29, 2015. (Dkt. # 1, Pg. ID 1.)

Defendants moved to dismiss, or in the alternative, moved for summary judgment on the grounds that a six-month limitations period in Plaintiff's employment contract bars all claims, and on the grounds that Plaintiff's ADA claim is time-barred by a 90-day statute of limitations. Plaintiff did not provide the written contract containing the six-month limitation provision or the EEOC's right-to-sue notification with her Complaint, nor did the Complaint reference or rely upon either document. Rather, Defendants attached the written contract containing the limitations provision to the motion as Exhibit 1. (Dkt. # 2-1, Pg. ID 48.). Plaintiff, in turn, attached this document to her response in opposition as Exhibit A. Plaintiff also attached the EEOC's right-to-sue notification to her response in opposition as Exhibit B. (Dkt. # 5-3, Pg. ID 77-78.)

## II. STANDARD

5

Federal Rule of Civil Procedure 12(d) provides that "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Here, Defendants and Plaintiff each submit documents extraneous to the pleadings to support the instant motion and response in opposition. The court accordingly construes this motion as a motion for summary judgment. *See Wysocki v. International Business Machine Corp.*, 607 F.3d 1102, 1104-07 (2010) (affirming the application of Rule 12(d) to a 12(b)(6) motion when the moving party submitted evidence outside the pleadings).[4]

A court will enter summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden to show that there is no genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to present evidence of "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). The evidence presented by the nonmoving party must surpass "some metaphysical doubt as to the material

---

[4] Using a summary judgment standard ensures that the nonmoving party has "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Here, Plaintiff either adopted or personally submitted all evidence outside the pleadings upon which the briefing rests (primarily the employment contract). It is therefore unnecessary to allow for additional discovery before the court determines whether summary judgment is appropriate based on the evidence presented, at least as to the issues raised here.

facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is not the court's task to weigh the evidence or the truthfulness of claims, but rather to determine whether a genuine issue of fact prohibits judgment for one party as a matter of law. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Summary judgment is inappropriate if "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251–52.

### III. DISCUSSION

Summary judgment will be granted to Defendants as to Count V, violation of the ADA, on the grounds that this claim is time-barred by the ADA's 90-day statute of limitations. Summary judgment will also be granted to Defendants as to Count I, wrongful termination/breach of employment contract, Count III, intentional infliction of emotional distress, Count IV, retaliatory discharge/violation of state public policy, and Count VI, disparate treatment/racial discrimination on the grounds that each of these four claims is time-barred by a six-month contractual limitations period in Plaintiff's employment contract. Summary judgment will be denied as to Count II, violation of the FMLA.

#### A. The ADA Claim

Under the ADA, a plaintiff must file disability discrimination claims against an employer, if at all, within 90 days after receipt of a right-to-sue notification from the EEOC. 42 U.S.C. § 2000e–5(f)(1). Here, Plaintiff received an EEOC right-to-sue notification with respect to her disability discrimination claim on April 30, 2014. She

brought the claim against Defendants on September 28, 2015, exceeding the 90-day statute of limitations by more than one year.

Plaintiff argues that her ADA claim is timely because she has not exceeded the three-year statute of limitations set forth in Michigan's Persons with Disabilities Civil Rights Act.  (Dkt. # 5, Pg. ID 73.) In her response, she suggests (for the first time) that the statute of limitations for claims arising under the ADA does not apply to her claim —cast in the language of and with reference only to the ADA— alleging that DMC also violated state disability discrimination law.

Plaintiff's Complaint alleges that "Defendant violated Title I of the ADA," (Dkt. # 1-2, Pg. ID 22.), so the 90-day statute of limitations for claims arising under the ADA plainly applies to this claim.[5]  Summary judgment is granted to Defendants on the grounds that Plaintiff far exceeded the 90-day limitations period.  *See Peete v. Am. Standard Graphic*, 885 F.2d 331, 331 (6th Cir. 1989) (action time-barred when plaintiff filed a discrimination claim 91 days after receipt of an EEOC right-to-sue notification); *McGhee v. Disney Store*, 53 F. App'x 751, 752 (6th Cir. 2002) (affirming dismissal of an ADA claim when plaintiff brought suit 92 days after receipt of an EEOC right-to-sue notification). The ADA claims fails.

### B.  The State Law Claims (Counts I, III, IV, VI)

Plaintiff's signature on the Acknowledgment and Acceptance of Employment contract, dated May 2001, indicates that Plaintiff agreed to a six-month limitations

---

[5] To the extent Plaintiff has stated a disability claim under Michigan law by including in a parenthetical to the title of the count a citation to the Elliot Larsen Act, that state-law claim is barred by the employment contract, as explained in Part III.B.

period on all employment-related claims and understood the consequences of this shortened limitations period. Plaintiff's termination, the event giving rise to all claims in this case, occurred on April 2, 2014. Plaintiff brought this action on September 28, 2015, almost one year after Plaintiff's six-month contractual limitations period expired on October 2, 2014.

It is well established that shortened limitations periods are valid and enforceable in employment contracts, "provided that the shortened period itself shall be a reasonable period." *Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947). Although the issue of whether a shortened limitations period is enforceable with respect to claims arising under state law is an issue of state law, *Ferro Corp. v. Garrison Industries, Inc.*, 142 F.3d 926, 931 (6th Cir. 1998), the Sixth Circuit has held that six-month limitations periods on employment-related claims are not inherently unreasonable. *See, e.g.*, *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357 (6th Cir. 2004); *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1988). Recently, the Michigan Supreme Court entirely rejected a "reasonableness" standard with respect to limitations period terms in employment contracts. *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 43 (Mich. 2005) ("[U]nambiguous contracts . . . are to be enforced as written unless a contractual provision violates law or public policy."). After *Rory,* the Sixth Circuit held that six-month limitations periods on employment-related state law claims do not contravene Michigan state law or public policy. *Steward v. New Chrysler*, 415 F. App'x 632, 638-39 (6th Cir. 2011) (upholding six-month contractual limitations period on ELCRA race discrimination claims and IIED claims); *see also*

*Yeargin v. Chrysler Group, LLC*, 2013 WL 593474, at *6 (E.D. Mich., Feb. 15, 2013) (upholding six-month limitations period on IIED and negligence claims).

Here, each of Plaintiff's state law claims is time-barred by the express six-month contractual limitations period on employment-related claims in Plaintiff's Acknowledgment and Acceptance of Employment contract. Plaintiff does not dispute Defendants' reliance on the Acknowledgment and Acceptance of Employment in the present motion as to Plaintiff's state law claims; the court accordingly grants summary judgment in favor of Defendants as to Count I, wrongful termination/breach of contract; Count III, intentional infliction of emotional distress; Count IV, retaliatory discharge/violation of the ELCRA; and Count VI, disparate treatment/racial discrimination in violation of the ELCRA.

### C.  The FMLA Claim (Count II)

The court denies summary judgment to Defendants as to this final claim, violation of the FMLA.  Although Defendants argue that this claim, like Plaintiff's state law claims, is time-barred by the six-month contractual limitations period in Plaintiff's employment contract, Defendants acknowledge that the Sixth Circuit has not resolved the issue of whether contractual limitations periods apply to claims arising under the FMLA. Defendants urge this court to reject a body of cases from the Eastern District of Michigan that have distinguished FMLA claims from other employment-related claims that are subject to contractual time limitation.  Defendants cite cases from the other districts holding that FMLA claims are not exempt from contractual limitations periods.  It

appears that no court of appeals has fully addressed this issue.[1]

The statute of limitations for claims arising under the FMLA is two years, 29 U.S.C. § 2617(c)(1), and three years if the violation is willful, 29 U.S.C. § 2617(c)(2). Federal regulation 29 C.F.R. § 825.220(a)(1) prohibits an employer from "interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act." Additionally, "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA." 29 C.F.R. § 825.220(d).

Courts in the Eastern District of Michigan have interpreted 29 C.F.R. § 825.220 to preclude an employer from shortening the FMLA's statute of limitations. Most notably, in *Lewis v. Harper Hospital*, the court found that "imposing a six month statute of limitation is an interference with employees' rights" in violation of the statute. 241 F. Supp. 2d 769, 772 (E.D. Mich. 2002) (Duggan, J.). In subsequent cases, courts of this district have agreed with *Lewis*' interpretation of the law. See *Henegar v. Daimler–Chrysler Corp.*, 280 F. Supp. 2d 680, 681 (E.D. Mich. 2003) (Borman, J.); *Madry v. Gibraltor Nat. Corp.*, No. 10–138862011, 2011 WL 1565807 (E.D. Mich. Apr. 25, 2011) (Whalen, M.J.). Other district courts have followed suit, citing *Lewis* and denying summary judgment to employers despite contractual limitations periods in their employees' contracts. See *Conway v. Stryker Medical Div.*, 2006 WL 1008670 (W.D. Mich., April 18, 2006) (holding that a "waiver . . . fundamentally alters FMLA rights"); *Plitsas v. Federal Exp., Inc.*, Civil Action No. 07–5439, 2010 WL 1644056, *6 (D.N.J. Apr. 22, 2010); *Grosso v. Federal Exp. Corp.*, 467 F. Supp. 2d 449, 456 (E.D. Pa.

---

[1] The Sixth Circuit identified this issue in *Bates v. 84 Lumber Co., L.P.*, noting that both arguments "could potentially be meritorious." 205 F. App'x 317, 324 (6th Cir. 2006). That case was, however, resolved on other grounds.

2006).

Defendants argue that a competing set of cases, *Badgett v. Federal Express Corporation* in particular, is more persuasive than *Lewis* and its progeny. 378 F. Supp. 2d 613 (M.D.N.C. 2005). *Badgett* held that contractual limitations periods do not violate 29 C.F.R. § 825.220 because a statute of limitations cannot be characterized as a "right" given to employees under the FMLA. *Badgett* and like cases, *e.g. Allen v. Fed. Express Corp.*, No. 1:09CV17, 2009 WL 3234699 (M.D.N.C. Sept. 30, 2009), found it "unquestionable from the underlying policy that statutes of limitations are not 'rights' . . . but more correctly exist for the protection of defendants." *Badgett*, 378 F. Supp. 2d at 625. *See also Fink v. Guardsmark,* LLC, No. CV 03–1480–BR, 2004 WL 1857114, at *3–4 (D. Or. Aug. 19, 2004) (cited by *Badgett*) (granting summary judgment to defendant on potentially time-barred FMLA claim, noting that summary judgment would be warranted "[e]ven if the six-month contractual limitation were not enforceable").

Defendants' argument is compelling, but the court finds the *Lewis* line of cases more persuasive. 29 C.F.R. § 825.220(a) states that an employer may not interfere with *the exercise* of rights granted to employees under the FMLA. While a statue of limitations does serve to protect defendants from unending liability, it does not follow that shortening a statute of limitations does not interfere with a plaintiff's cause of action, or ability to enforce and exercise the rights established in the FMLA. The *Badgett* approach ignores the practical consequence of the contractual limitation: Plaintiff's cause of action is extinguished. If that does not "interfere" with the attempt to "exercise" a right, in this case the right to pursue a cause of action, it is unclear what would. The court holds, consistent with the *Lewis* decision, that shortening the time period during

12

which an employee may exercise his or her cause of action under the FMLA essentially limits, or at least "interfer[es] with," an employees ability to exercise a right that has been expressly granted under the FMLA. For that reason, the court denies Defendants' motion for summary judgment as to Count II.

### IV. CONCLUSION

IT IS ORDERED that Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Dkt. # 2, Pg. ID 29) is GRANTED in part and DENIED in part. Summary judgment is GRANTED to Defendants as to Plaintiff's ADA claim (Count V) and state law claims (Counts I, III, IV, VI) and DENIED as to Plaintiff's FMLA claim (Count II).


      s/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: August 19, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 19, 2016, by electronic and/or ordinary mail.

      s/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522